IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM DICKENS and KARLA DICKENS** | **PLAINTIFFS** |
| v. | CAUSE NO. 1:18CV162-LG-JCG |
| **A-1 AUTO PARTS & REPAIR INC., ET AL.** | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING MOTION FOR SUMMARY JUDGMENT

**BEFORE THE COURT** is the [369] Motion for Summary Judgment filed by Defendant Trinity Marine Products, Inc. ("Trinity"). The issues have been fully briefed by the parties. The Court finds that the law of either Delaware or Tennessee applies to the issue of successor liability under Section 145 of the Restatement (Second) of the Conflict of Laws. Because neither state recognizes Plaintiff's theory of recovery against Trinity the Motion is granted.

### BACKGROUND

In this products liability case, Plaintiffs allege that William Dickens developed mesothelioma as a result of his exposure to asbestos from various products manufactured, distributed, and supplied by the Defendants. (Pl.'s Am. Compl. ¶¶ 26-30, ECF No. 251). Among these Defendants is Trinity Marine Products, Inc., who is allegedly liable "for its NABRICO brand of products," which includes "asbestos-containing Nabrico winches." (*Id.* ¶ 21). Plaintiffs allege that William Dickens was exposed to asbestos while working with Nabrico-brand winches as a deckhand on boats and tugboats for Colle Towing Company in

Pascagoula, Mississippi. (*Id.* ¶ 26(e)). At his deposition, Plaintiff William Dickens testified that he worked on four of the relevant winches, placed port and starboard on two of Colle's vessels. (Dep. William Dickens, 400:17-407:2, ECF No. 370-2). The asbestos was allegedly found in the "brake pad" component of the winches, which Plaintiff changed three times a year. (*Id.* at 397:9-409:12). His work on Colle boats, and thus with Nabrico-brand winches, appears to have ceased in the late 1980s. (*Id.* at 85:3-88:25).

Resolution of this Motion will involve some discussion of Trinity's corporate history. The parties seem to agree that Trinity did not itself manufacture the subject winches. Rather, Trinity, under its previous name, Trinity O, Inc., purchased assets from the winch manufacturer, New Nabrico, in 1995. (*See generally* Purchase & Sale Agmt., ECF No. 370-3). This Purchase and Sale Agreement provides that it "shall be construed in accordance with and governed by the laws of the State of Tennessee." (Purchase & Sale Agmt., § 8.08, ECF No. 370-3). Further, Trinity O, Inc. was incorporated under the laws of Delaware in 1994 and changed its name to Trinity Marine Nashville, Inc. in 1995, which was eventually merged into Trinity Marine Products, Inc., as it is known in this litigation. (*See* Decl. Neal Langdon, ¶ 3, ECF No. 370-5).

Plaintiffs asserts state law claims of negligence in designing, testing, manufacturing, marketing, and selling the products, strict liability, negligence per se, breach of warranties, and conspiracy to conceal the dangers in the use and exposure to the products. (*See generally* Pl.'s Am. Compl. ¶¶ 31-96, ECF No. 251).

Because Trinity did not manufacture the allegedly asbestos-containing winches, Plaintiffs seek to hold it accountable under a theory of "successor liability," and the extent to which they may legally do so constitutes the central and dispositive issue in this Motion for Summary Judgment.

## DISCUSSION

### I.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249). In deciding

whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party. *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

## II. Choice of Applicable Law

The parties disagree on the *lex causae* under which Trinity's successor liability should be determined. The Court must therefore conduct a choice of law analysis before deciding the merits of the Motion. In doing so, it must be noted that this action is before the Court under the provisions of 28 U.S.C. § 1442, allowing removal where a civil action in state court is brought against "[t]he United States or any agency thereof or any officer . . . of the United States or any agency thereof, in an official or individual capacity, for or relating to any act under color of such office." 28 US.C. § 1442(a)(1).[1] "Although this is not a diversity action, '[a] federal court's r[o]le under § 1442(a) is similar to that of a federal court sitting in diversity.'" *McAllister v. McDermott, Inc.*, No. Civ. No. 18-361-SDD-RLB, 2020 WL 4745743, at *9 (M.D. La. Aug. 14, 2020). "Accordingly, the federal court applies the choice of law rules of the forum state to determine the applicable law." *Winters v. Diamond Shamrock Chem. Co.*, 941 F.Supp. 617, 620 (E.D. Tex. 1996); *see also McAllister*, 2020 WL 4745743, at *9 n. 117 (citing, *inter alia*, *Kolibash v. Comm. on Legal Ethics of W. Va. Bar*, 872 F.2d 571, 576 (4th Cir. 1989); *Baldonado v.*

---

[1] Defendant CBS Corporation ("Westinghouse") invoked this provision in connection to its design, manufacture, and supply of relevant equipment to the United States Navy subject to its direct authority and approval. (Not. Removal, ¶¶ 7-16, ECF No. 1).

-- 4 --

*Arinmeritor, Inc.*, Civ. No. 13-833-SLR,CJB, 2014 WL 2116112, at *3 (D. Del. May 20, 2014)).

Accordingly, Mississippi's choice of law rules shall determine the law governing the issue of successor liability. *See Bouchillon v. SAME Deutz-Fahr, Grp.*, 268 F. Supp. 3d 890, 899 (N.D. Miss. 2017) (applying Mississippi's choice of law rules to determine the substantive law governing a corporation's successor liability, as "'the law of a single state does not necessarily control every issue in a given case'") (quoting *Boardman v. United Servs. Auto Ass'n*, 470 So.2d 1024, 1031 (Miss. 1985)).

### 1. True Conflict of Laws

"In Mississippi, choice-of-law analysis arises only when there is a true conflict between the laws of two states, each having an interest in the litigation." *Williams v. Liberty Mut. Ins. Co.*, 741 F.3d 617, 620 (5th Cir. 2014) (citing *Zurich Am. Ins. Co. v. Goodwin*, 920 So.2d 427, 432 (Miss. 2006)). Plaintiffs appeal to "the product line theory to successor liability, available under Mississippi law." (Pls.' Mem. Opp. Def.'s Mot. Summ. J., 2, ECF No. 372). In contrast, Trinity invokes the law of either Delaware, as the state of its incorporation, or Tennessee, as the law provided in its Purchase and Sale Agreement with New Nabrico. (*See* Def.'s Mem. Supp. Mot. Summ. J., 7, ECF No. 370).

There is no indication that Delaware has adopted the product line exception to the general rule against successor liability. *See, e.g., The O'Brien Corp. v. Hunt-Wesson, Inc.*, Civ. No. A. 16562, 1999 WL 126996, at *7 n. 3 (Del. Ch. Feb. 25, 1999);

*see also Lopez v. Delta Int'l Mach. Corp.*, 312 F. Supp. 3d 1115, 1162 (D.N.M. 2018) ("The Court could also find no Delaware decision adopting the product-line exception, but it has found two lower court decisions critiquing it.").[2]  Indeed, recent Delaware decisions list no more than the traditional exceptions to the general rule against successor liability.  *In re Asbestos Litig. Estate of Franco v. CSX Transp., Inc.*, 2015 WL 4399960, at *2-3 (Sup. Ct. Del. July 13, 2015).  Thus, the Court concludes that Delaware has not adopted the product line exception.

Nor does the exception seem to be recognized in the courts of Tennessee.  The "traditional rule" of successor liability was articulated by a Tennessee federal district court in *Bonee v. L&M Const. Chem.*, 518 F.Supp. 375, 381 (M.D. Tenn. 1981), applying Ohio law.  Although the *Bonee* court reviewed judicial developments in the area of successor liability, including the product line theory, it concluded that such an exception "departed completely from traditional corporate law in determining successor liability."  *Id.* at 380.  Citing *Bonee*, the "traditional rule" of

---

[2] There is an older Delaware decision which states that, "[d]espite the general rule, in some limited situations where an avoidance of liability would be unjust, a purported sale of assets for cash or other consideration may be found to transfer liabilities of the predecessor corporation." *Fehl v. S.W.C. Corp.*, 433 F. Supp. 939, 945 (D. Del. 1977).  Another opinion briefly lists "sameness of product lines" as a factor to be considered in applying "the continuation theory of corporate successor liability." *United States v. Chrysler Corp.*, Civ. Nos. 88-341-CMW, 88-534-CMW, 1990 WL 127160, at *5 (D. Del. Aug. 28, 1990); *but see Marnavi S.p.A. v. Keehan*, 900 F. Supp. 2d 377, 397 (D. Del. 2012) (finding that the continuation theory was not satisfied by the successor maintaining "at least one product line that [the predecessor] formerly sold"); *see also Miller v. Werner Co.*, No. 2:10CV197-DF, 2011 WL 13217183, at *3-4 (E.D. Tex. July 25, 2011) (noting the *Chrysler* case while finding that Delaware's successor liability law includes only four traditional exceptions).  But the Court cannot locate any case which elaborates on these statements or articulates it as a recognizable, distinct product-line exception.

-- 6 --

successor liability was adopted by the Tennessee appellate courts in *Gas Plus of Anderson Cty., Inc. v. Arowood*, 1994 WL 465797, at *3-4 (Ten. Ct. App. 1994) and *Hopewell Baptist Church v. Se. Window Mfg. Co.*, LLC, 2001 WL 708850, at *4 (Tenn. Ct. App. 2001) (noting that *Bonee*'s traditional successor liability rule "was cited with approval in an unreported decision of this Court" such that it would "apply this 'traditional rule'").[3] The Court concludes that the Tennessee courts retain the narrower rules of successor liability.

In contrast, the Mississippi Supreme Court "view[s] the product line theory as a viable basis for recovery." *Huff v. Shopsmith, Inc.*, 786 So.2d 383, 388 (Miss. 2001); *Gregory ex rel. Gregory v. Central Sec. Life Ins. Co.*, 953 So.2d 233, 238 (Miss. 2007) (noting that "the 'product line theory'" was "recognized by this Court in *Huff v. Shopsmith*") (citation omitted). From these and like statements, this Court concluded that "[t]he Mississippi Supreme Court adopted the 'product line successor' theory of liability in *Huff v. Shopsmith*." *Sharp v. Atwood Mobile Prods., Inc.*, No. 2:12CV82-KS-MTP, 2013 WL 2099737, at *2 (S.D. Miss. May 14, 2013); *see also Massarella v. The Lane Co., Inc.*, No. 1:02CV99-M-D, 298 F.Supp.2d 430, 435 (N.D. Miss. Jan. 17, 2003) ("In *Huff*, the Supreme Court of Mississippi listed the elements necessary to prevail on a 'product line theory' of liability."). Trinity's skepticism as to Mississippi's adoption of the exception cannot surmount these

---

[3] It is worth noting that another Tennessee federal district court criticized the product line theory in a decision which applied Pennsylvania law. *Woody v. Combustion Engineering, Inc.*, 463 F. Supp. 817, 821 (E.D. Tenn. 1978).

express statements of the Mississippi Supreme Court and interpreting federal courts.

### 2.     Restatement (Second) Choice of Law Analysis

Because there is a true conflict regarding the viability of the product line theory among Delaware, Tennessee, and Mississippi, the Court must conduct a choice of law analysis. This will take the following form:

> Once a true conflict is established, Mississippi's choice of law test consists of three steps: (1) Determine whether the laws at issue are substantive or procedural. If they are procedural, the inquiry ends, and Mississippi law applies. (2) If substantive, classify the laws as either tort, property, or contract; and (3) look to the relevant section of the Restatement (Second) of Conflict of Laws. With regard to the last step, Mississippi resolves conflict-of-laws questions using the "significant relationship" test found in the Restatement (Second) of Conflict of Laws (1971).

*Bouchillon*, 268 F. Supp. 3d at 899 (quoting *Williams*, 741 F.3d at 620-21 (internal alterations, quotation marks, and citations omitted)). *Bouchillon* dictates, in line with reason, that issues of successor liability are substantive rather than procedural. 268 F. Supp. 3d at 900. The second step involves its categorization within the realm of private law as either tort, property or contract. In a footnote, the *Bouchillon* Court cited the Third Circuit's statement that "'[t]he product line exception . . . is generally analyzed using torts choice of law principles.'" *Id.* at 901 n. 13 (quoting *Berg Chilling Sys., Inc. v. Hull Corp.*, 435 F.3d 455, 464 (3rd Cir. 2006)). Although Trinity disputes this classification, the Court sees no reason to diverge therefrom. The California Supreme Court was first moved to create the doctrine by the considerations underlying "strict tort liability." *Ray v. Alad Corp.*, 560 P.2d 3, 11 (Cal. 1977) (cited with approval in *Huff*, 786 So.2d at 387); *see also*

*Lopez v. Delta Int'l Mach. Corp.*, Civ. No. 15-0193-JB/GBW, 2017 WL 3142028, at *33 (D.N.M. July 24, 2017) ("Generally, states applying the product-line exception have characterized it as a matter of tort law.") (collecting cases); *Ruiz v. Blentech Corp.*, 89 F.3d 320, 327 (3rd Cir. 1996) (finding it "quite clearly established" that California's doctrine "is a matter of products liability law, not corporate law"). Although a corporate purchase of assets may be necessary for liability under the exception, the imposition of product line liability is grounded in reasons familiar to tort law (not for reasons relating to contractual assumption or corporate identity).[4] Trinity notices "'the confusing effect of introducing an explicitly tort-based exception to a traditionally corporate- and contract-based doctrine'" (Reply Mem. Supp. Mot. Summ. J., 6, ECF No. 373) (quoting *Berg*, 435 F.3d at 465), but the wisdom of Mississippi's approach is not for the Court to decide.

"In tort matters, Mississippi applies section 145 of the Restatement Second." *Williams*, 741 F.3d at 620-21 (citations omitted). Section 145 of the Restatement reads: "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles

---

[4] This remains true even though the issue on a successor liability choice-of-law analysis "is 'the transaction which (potentially) gave rise to successor liability,' not the 'underlying tortious conduct.'" *Bouchillon*, 268 F. Supp. 3d at 901 (quoting *Allstate Ins. Co. v. Countrywide Fin. Corp.*, 824 F. Supp. 2d 1164, 1173-74 (C.D. Cal. 2011)). The *Lopez* Court also quoted this language from *Allstate* but found that the state supreme court diverged from the traditional bases of successor liability when it based the exception in tort policy. *Lopez*, 2017 WL 3142028, at *38. Similarly, the Mississippi Supreme Court supported the product line exception with tort-based policy considerations. *See Huff*, 786 So.2d at 386-89.

stated in § 6." Restatement (Second) of Conflict of the Conflict of Laws § 145 (1971). Relevant contacts include "(a) the place where the injury occurred, (b) the place where the conduct causing the injury occurred, (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and (d) the place where the relationship, if any, between the parties is centered.  These contacts are to be evaluated according to their relative importance with respect to the particular issue." *Id.*  Section 6 of the Restatement guides other considerations, including "(a) the needs of the interstate and international systems, (b) the relevant policies of the forum, (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue, the protection of justified expectations," among others.  *Id.* § 6.

The Court finds instructive the case of *Webb v. Rodgers Machinery Mfg. Co.*, 750 F.2d 368 (5th Cir. 1985).  There, the Fifth Circuit analyzed Section 145 of the Restatement with respect to "the liability of a succeeding business entity using the trade name of a previously existing proprietorship." *Id.* at 374.  The Fifth Circuit took a business-centered approach and found that "[a]ll the contacts with respect to that issue occurred in California," because "[t]he corporations and proprietorships involved in these transactions were all Californian." *Id.*  "Thus, California clearly has the most significant relationship with respect to the particular issue of whether the defendant Rodgers corporation can be held liable for the torts of the preceding Rodgers proprietorship." *Id.*  It is unclear whether *Webb* involved California's tort-based product line exception, or the more traditional exceptions grounded in

corporate and contract law. *Id*. Like *Webb*, however, the contacts relevant to the *successor liability* issue in the present case occurred in Delaware and Tennessee—Trinity is a Delawarean corporation, and its purchase agreement with New Nabrico invoked Tennessee law. (*See* Decl. Neal Langdon, ¶ 3, ECF No. 370-5; Purchase & Sale Agmt., § 8.08, ECF No. 370-3).

Hence, Delaware and Tennessee have the "most significant relationship" to the particular issue before the Court. Although product line liability is tort-based, the "place of incorporation and place of business of the parties" may still be relevant to tort issues under Section 145, and the "relative importance" of these contacts is to be determined "with respect to the particular issue." Restatement (Second) of Conflict of the Conflict of Laws § 145(2)(c) (1971). Thus, following *Webb*, the Court concludes that corporate and contractual contacts are of greater importance to issues of successor liability. The law of either Delaware or Tennessee governs the successor liability issue, rather than the law of Mississippi, which is of greater relevance to issues concerning the underlying tort injury.

### III. Successor Liability Under Delaware and Tennessee Law

The Court has already found that the states of Delaware and Tennessee do not recognize the product line exception to the general rule against successor liability. *See infra* § II.1. Plaintiffs agree with this assessment. (Pls.' Mem. Opp. Def.'s Mot. Summ. J., 6-7, ECF No. 372) ("Delaware courts have not adopted the product line theory of successor liability. . . . Nor have Tennessee courts.") (citations

omitted). Therefore, and after independent research, the Court concludes that Trinity cannot be held liable under this theory.[5]

It is worth noting that another Fifth Circuit court has come to the same conclusion. The Eastern District of Texas, conducting a similar choice of law analysis on the issue of successor liability, discussed *Webb* in its finding that "Vermont law should be applied to the issue of successor liability." *White v. Cone-Blanchard Corp.*, 217 F.Supp.2d 767, 770 (E.D. Tex. 2002). The defendant was a Delaware corporation with its principal place of business in Vermont, the purchase of assets occurred in Vermont, and the purchase agreement included a choice of law clause invoking Vermont law. *Id.* at 771. Hence, following *Webb*, "Vermont law will be used to determine whether a successor corporation can be held liable," although a different state's law would be "applied for the underlying tort." *Id.* The Eastern District went on to discover an "explicit rejection of the product-line theory by the Vermont Supreme Court"; thus, the plaintiff could not recover under that theory. *Id.* at 774-75. Here, the same facts militate in favor of Delaware and Tennessee, neither of which have adopted the theory.[6]

---

[5] Although Defendant argued that alternative theories of recovery, including the mere continuation theory and implied assumption theory, are unavailable under Delaware and Tennessee law respectively (*See generally* Mem. Supp. Mot. Summ. J., 9-19, ECF No. 370), Plaintiffs only invoked the product line theory in their Opposition thereto, and never directly addressed these other exceptions. (*See* Pls.' Mem. Opp. Def.'s Mot. Summ. J., ECF No. 372). The Court will not explore the viability of claims which Plaintiffs have not asserted.

[6] *See also Fuit v. Extreme Prods. Grp., LLC*, No. 1:16CV35, 2018 WL 1801914, at *3-4 (D. Utah Apr. 13, 2018) (applying Restatement § 145 to successor liability and the product line theory and finding that business-related contacts "to be most helpful" because "the issue of successor liability in this case centers around the relationship

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [369] Motion for Summary Judgment filed by Defendant Trinity Marine Products, Inc., is **GRANTED**.

**SO ORDERED AND ADJUDGED** this the 23rd day of October, 2020.

*s/ Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE

---

between" two corporations); *Chubb Nat. Ins. Co. v. Watts Regulator Co.*, 258 F. Supp. 3d 212, 215-17 (D. Mass. 2017) (applying tort sections of the Restatement to successor liability and the product line theory "as it relates to corporate successorship, not the underlying tort claim," and finding that business-related contacts, as well as the parties' expectations, were favored in this issue, although thereby precluding recovery due to that state's rejection of the theory); *Williams-Smith v. Designers Edge, Inc.*, Civ. No. G-10-590, 2012 WL 1201926, at *4 (S.D. Tex. Apr. 10, 2012) (applying the significant relationship test of § 188 of the Restatement (2d) with respect successor liability and the product line exception and finding that the state of organization and place of business, as well as the state of the purchase agreement and assets purchased therein, "has the most significant relationship to the contract and the dispute at hand"); *but see Van Doren v. Coe Press Equip. Corp.*, 592 F. Supp. 2d 776, 783-87 (E.D. Pa. 2008) (applying Restatement § 145 to successor liability under the product line theory and finding that the state where plaintiff was domiciled and injured retained a greater interest "in protecting its citizens against defective products," as it is "only fair to permit a local plaintiff to rely on his home state's law when he is injured within that state," and thus proceeding to apply the product line exception which that state had adopted).