IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM DICKENS and** | **PLAINTIFFS** |
| **KARLA DICKENS** | |
| | |
| **v.** | **CAUSE NO. 1:18CV162-LG-JCG** |
| | |
| **A-1 AUTO PARTS & REPAIR INC., et** | |
| **al.** | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT FORD MOTOR CO.'S MOTIONS FOR SUMMARY JUDGMENT

**BEFORE THE COURT** are two [401] [405] Motions for Summary Judgment

filed by Defendant Ford Motor Co. ("Ford").  The issues have been fully briefed by

the parties.  After due consideration of the Motion and the relevant law, it is the

Court's opinion that the Motions should be granted.

### BACKGROUND

In this products liability case, Plaintiffs allege that William Dickens

developed mesothelioma as a result of his exposure to asbestos from various

products manufactured, distributed, and supplied by the defendants.  (Pl.'s Am.

Compl. ¶¶ 26-30, ECF No. 251).  Plaintiffs assert state law claims of negligence in

designing, testing, manufacturing, marketing, and selling the products, strict

liability, negligence per se, breach of warranties, and conspiracy to conceal the

dangers in the use and exposure to the products, against various Defendants.  (*See

generally* Pl.'s Am. Compl. ¶¶ 31-96, ECF No. 251).

Among these Defendants is Ford Motor Co., which is "sued for asbestos-containing Ford friction products." (*Id.* ¶¶ 10-11). Ford now moves for summary judgment, arguing in its [401] first Motion that Plaintiffs lack evidence that Ford products caused Dickens's mesothelioma. Ford's [405] second Motion argues that Plaintiffs lack evidence of conduct justifying punitive damages. Plaintiffs have opposed [451] [452] both Motions with a lengthy discussion of Dickens's deposition testimony and related evidence. Defendant [460] [458] replied, and the issues are now ripe for disposition.

**DISCUSSION**

## I.   Summary Judgment Standard

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc).

"A genuine dispute of material fact means that 'evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Royal v. CCC & R Tres Arboles, L.L.C.*, 736 F.3d 396, 400 (5th Cir. 2013) (quoting *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  If the evidence presented by the nonmovant "'is merely colorable, or is not significantly probative,' summary judgment is appropriate." *Cutting Underwater Techs. USA, Inc. v. ENI U.S. Operating Co.*, 671 F.3d 512, 516 (5th Cir. 2012) (quoting *Anderson*, 477 U.S. at 249).  In deciding whether summary judgment is appropriate, the Court views the evidence and inferences in the light most favorable to the nonmoving party.  *RSR Corp. v. Int'l Ins. Co.*, 612 F.3d 851, 857 (5th Cir. 2010).

## II.    Causation

Ford first requests summary judgment on the issue of causation.  This Court has previously stated that, in any products liability action, "'it is incumbent upon the plaintiff . . . to show that the defendant's product was the cause of the plaintiff's injuries.'" *Dickens v. A-1 Auto Parts & Repair*, No. 1:18CV162-LG-RHW, 2019 WL 5197555, at \*1 (S.D. Miss. Oct. 15, 2019) (quoting *Gardley-Starks v. Pfizer, Inc.*, 917 F. Supp. 2d 597, 602 (N.D. Miss. 2013)).  The Mississippi Supreme Court has articulated the applicable standard as follows:

> [I]n asbestos litigation cases, the frequency, regularity, and proximity test is the proper standard in determining exposure and proximate cause.  So that there can be no question, we today add product identification to that standard as well.  Because the plaintiffs have failed to prove product identification, exposure, and proximate cause of Monsanto's products with any regularity, frequency, or proximity to the plaintiffs, consistent with our holding in *Gorman Rupp*, the plaintiffs' case fails.

*Monsanto Co. v. Hall*, 912 So. 2d 134, 137 (Miss. 2005).

Thus, a products liability plaintiff proves causation through (1) exposure to a particular product; (2) on a regular basis; (3) over an extended period of time; and

(4) in proximity to where the plaintiff actually worked.  *Gorman-Rupp Co. v. Hall*, 908 So.2d 749, 757 (Miss. 2005).  This test is "a de minimis rule in that a plaintiff is required to prove more than a casual or minimal contact with the product."  *Smith v. Union Carbide Corp.*, 130 So. 3d 66, 69 (Miss. 2013).  Failure to produce evidence of exposure at hazardous levels leaves a plaintiff "'unable to carry their burden on the issue of causation.'"  *Gorman-Rupp Co.*, 908 So.2d at 757 (quoting *Chavers v. Gen. Motors Corp.*, 79 S.W. 3d 361, 369 (Ark. 2002)).  The Mississippi Supreme Court has held that this standard is properly applied "in the context of a motion for summary judgment."  *Smith*, 130 So.3d at 69 (citing *Monsanto Co.*, 912 So.2d at 137); *see also Dufour v. Agco Corp.*, No. 1:05CV169-WJG-JMR, 2009 WL 161859, at *1-2 (S.D. Miss. Jan. 22, 2009) (granting summary judgment in an asbestos case where "Plaintiffs cannot establish contact with any Ford or GM product")).

Based on this standard, the Mississippi Supreme Court twice held that asbestos plaintiffs had failed to demonstrate causation and reversed a lower court's denial of summary judgment to the defendants.  *See Gorman-Rupp*, 908 So.2d at 757-58; *Monsanto Co.*, 912 So.3d at 137-38.  After these cases, the Court clarified that an oil rig employee's contact with "'thousands'" of bags of asbestos drilling mud additives over twenty years justified a finding of causation.  *See Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1063 (Miss. 2012); *but see Smith*, 130 So.3d at 70 (noting that the application of the test in *Phillips* was dicta).  The plaintiff's "testimony [was] replete with references to his having had frequent contact with" the product "in the close confines of an unventilated mud room."  *Phillips*, 94 So. 3d at 1063.

-- 4 --

Moreover, in the present litigation this Court has previously found that eight instances of exposure to an asbestos-containing product over four years did not justify a finding of causation.  *See Dickens*, 2019 WL 5197555, at \*2.

Courts of other jurisdictions have elaborated on Mississippi's causation standard in asbestos litigation.  In *Lohrmann*, cited favorably by the Mississippi Supreme Court in its adoption of the standard, the court found that exposure to an asbestos-containing product ten to fifteen times over the course of employment failed to raise a permissible inference of causation.  *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1163 (4th Cir. 1986).  In a Delaware federal case applying Mississippi law, the plaintiff worked with asbestos-containing brakes "twelve times" and identified "some of the brakes" as those of defendant—alongside others—but his estimations left the court "guessing" as to how many times the plaintiff worked with the offending brakes.  *Winhauer v. Air & Liquid Sys. Corp.*, Civ. No. 15-177-RGA-SRF, 2016 WL 4238637, at \*7 (D. Del. Aug. 9, 2016) (applying Mississippi law).  Denying summary judgment, the court distinguished *Phillips* in that "there [was] no evidence that [plaintiff] was regularly exposed to Bendix brakes over a prolonged period of time" or "in a general or regularly established manner." *Id.* (citing *Phillips*, 94 So.3d at 1063).  The court further distinguished a Pennsylvania federal case where, "even though the plaintiff could not recall specifics, testimony regarding general occupational work with and around asbestos-containing products was sufficient to deny summary judgment based on the Mississippi product identification standard."  *Winhauer*, 2016 WL 4238637, at \*6

(distinguishing *Dalton v. 3M Co.*, Civ. No. 2:10-64604, 2011 WL 5881010 (E.D. Pa. Aug. 2, 2011 and *Dalton v. 3M Co.*, Civ. No. 2:10-64604, 2011 WL 5881011 (E.D. Pa. Aug. 2, 2011)).  The Delaware federal court also found in a similar case that a shipyard employee who insulated asbestos-containing generators on at most ten ships and who testified that this insulation was a "'small' part of his work" had failed to pass the Mississippi asbestos causation test.  *Malone v. Air & Liquid Sys. Corp.*, Civ. No. 14-406-GMS-SRF, 2016 WL 4522164, at *7-8 (D. Del. Aug. 29, 2016) (applying Mississippi law).

Naturally, Ford disputes the extent to which its products may have caused Dickens's mesothelioma under this standard and relevant case law.  Dickens was first potentially exposed to these products during his employment at Speedy Gas Station, where he worked as a part time mechanic beginning in 1973.  (Video Dep. William Dickens, 26:20-27:4, ECF No. 451-1).  There, Dickens performed a number of brake and clutch jobs, which involved blowing off dust particles from parts into the surrounding air, which he then breathed.  (*Id.* at 34:23-37:3; 48:24-49:13).  Overall, Dickens testified that he personally worked with Ford products "twenty to twenty-five times," notably on city police cars.  (Discovery Dep. William Dickens, 314:13-315:15, ECF No. 451-2).[1]  After his tenure at Speedy, Dickens had some

---

[1] Plaintiffs point to other figures to suggest that Dickens may have been exposed more frequently than his testimony indicates.  Dickens testified that he would work at Speedy four days a week while in school and six days a week over the summer. (*Id.* at 29:9-24).  Speedy averaged 2 brake jobs and 4-5 clutch jobs during a typical school week, but 8-10 brake jobs and 3-9 clutch jobs during a summer week.  (*Id.* at 37:6-25; 46:13-47:16).  Dickens estimated that 20% of the brake jobs and 15% of the clutch jobs involved Ford products.  (*Id.* at 39:16-40:5; 51:3-10).  It should be noted

amount of contact with Ford products.  He recounted a few instances in the 1970s

and '80s of interacting with Ford products on vehicles owned by his friends and

family.  (Discovery Dep. William Dickens, 170:17-173:7; 324:6-325:3; 356:8-19, ECF

No. 451-2).  As a mechanic for Colle Towing in the '80s and '90s, Dickens

remembered working on two Ford F250 Econoline vans.  (*See id.* at 376:13-5; 528:2-

533:).  However, when questioned at his deposition, he could not remember the

brand name of the parts he removed or installed in these vans.  (*Id.* at 530:21-

534:20).

Applying Mississippi law and upon this limited testimony, the Court must

grant summary judgment to Ford.  After a thorough review of the cases on the

"frequency, regularity, and proximity" test, the Court finds that the facts of

Dickens's involvement with Ford products, to which he testified in his deposition,

most closely resembles those of *Lohrmann*, *Winhauer*, and *Malone*, *supra*, where the

plaintiff's contact with the offending product was limited to discrete and countable

instances.  *See Lohrmann*, 782 F.2d at 1163; *Winhauer*, 2016 WL 4238637, at \*6-7;

*Malone*, 2016 WL 4522164, at \*7-8.  Likewise, Dickens recalled twenty to twenty-

five instances of involvement with Ford products at Speedy, and isolated instances

thereafter—some of which he could not identify as the Ford brand.  While this

presents a close question, the Court finds that these facts are unlike those found

---

that Dickens could not recall personally installing any brand of clutch besides those
of Borg-Warner.  (*See id.* at 47:22-48:7).  But statistical calculations based on these
figures are simply too speculative to create a genuine issue of material fact against
his explicit "twenty to twenty-five times" testimony.

sufficient in *Phillips,* where contact with "'thousands' of bags" of asbestos-

containing materials over twenty years passed the causation threshold.  *See*

*Phillips*, 94 So. 3d at 1063.  Accordingly, there is no genuine issue of material fact

as to the lack of an essential element of Plaintiff's claim and summary judgment is

warranted.

## III.   Wanton and Willful Conduct and Punitive Damages

Next, Ford moves for summary judgment on the availability of punitive

damages.  Mississippi law disfavors punitive damages.[2]  "In any action in which the

claimant seeks an award of punitive damages, the trier of fact shall first determine

whether compensatory damages are to be awarded and in what amount, before

addressing any issues related to punitive damages."  *Id.* § 11-1-65(1)(b); *see also*

*Boatright v. A&H Techs., Inc.*, 296 So. 3d 687, 701 (Miss. 2020) ("[W]ithout actual

damages, punitive damages are not recoverable.") (citing *Jenkins v. CST Timber*

*Co.*, 761 So. 2d 177, 180 (Miss. 2000)); *Union Carbide Corp. v. Nix, Jr.*, 142 So. 3d

374, 392 (Miss. 2014) (noting in an asbestos case that "[a]bsent a valid claim for

compensatory damages, there can be no claim for punitive damages").  Hence,

---

[2] The applicable statute provides that "[p]unitive damages may not be awarded if
the claimant does not prove by clear and convincing evidence that the defendant
against whom punitive damages are sought acted with actual malice, gross
negligence which evidences a willful, wanton or reckless disregard for the safety of
others, or committed actual fraud."  Miss. Code Ann. § 11-1-65(1)(a); *see also Warren*
*v. Derivaux*, 996 So. 2d 729, 738 (Miss. 2008) ("Mississippi law does not favor
punitive damages; they are considered an extraordinary remedy and are allowed
'with caution and within narrow limits.'") (quoting *Life & Cas. Ins. Co. of Tenn. v.*
*Bristow*, 529 So. 2d 629, 622 (Miss. 1988)); *Paracelsus Health Care Corp. v. Willard*,
754 So. 2d 437, 442 (Miss. 1999) (Punitive damages are only appropriate in the
"most egregious cases," where the actions are "extreme.") (citing *Wirtz v. Switzer*,
586 So. 2d 775, 783 (Miss. 1991)).

-- 9 --

where "Plaintiffs' underlying claims fail as a matter of law, . . . Plaintiffs' punitive-damages claims also fail." *Elliott v. El Paso Corp.*, 181 So. 3d 263, 275 (Miss. 2015) (citing *Nix*, 142 So. 3d at 392). Because the Court grants summary judgment to Ford on the substantive claims, Plaintiffs' claim for punitive damages must also be dismissed.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [401] Motion for Summary Judgment on Causation and [405] Motion for Summary Judgment on Plaintiffs' Willful and Wanton Conduct Cause of Action and Claim for Punitive Damages, both filed by Defendant Ford Motor Co., are **GRANTED**. Plaintiffs' claims against Ford Motor Co. are **DISMISSED WITH PREJUDICE.**

**SO ORDERED AND ADJUDGED** this the 11th day of February, 2021.

s/ *Louis Guirola, Jr.*

LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE