IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | |
|---|---|
| **WILLIAM DICKENS and KARLA DICKENS** | **PLAINTIFFS** |
| v. | CAUSE NO. 1:18-cv-162-LG-JCG |
| **A-1 AUTO PARTS & REPAIR INC., et al.** | **DEFENDANTS** |

## MEMORANDUM OPINION AND ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION

**BEFORE THE COURT** is the [475] Motion for Reconsideration filed by Plaintiffs, William and Karla Dickens. The issues have been fully briefed by the parties. After due consideration of the Motion and the relevant law, it is the Court's opinion that the Motion should be denied.

### BACKGROUND

In this products liability case, Plaintiffs allege that William Dickens developed mesothelioma as a result of his exposure to asbestos from various products manufactured, distributed, and supplied by the defendants. (Pl.'s Am. Compl. ¶¶ 26-30, ECF No. 251). Plaintiffs assert state law claims of negligence in designing, testing, manufacturing, marketing, and selling the products, strict liability, negligence per se, breach of warranties, and conspiracy to conceal the dangers in the use and exposure to the products, against various Defendants. (*See generally* Pl.'s Am. Compl. ¶¶ 31-96, ECF No. 251).

Ford Motor Co. was originally among these defendants and was "sued for asbestos-containing Ford friction products." (*Id.* ¶¶ 10-11). On November 17, 2020, Ford moved for summary judgment in two [401] [405] Motions, asking the Court to dismiss both the substantive and punitive damage claims against it. By [471] Memorandum Opinion and Order dated February 11, 2021, the Court found that Plaintiff lacked sufficient evidence of asbestos causation under the standard set forth in *Monsanto Co. v. Hall*, 912 So. 2d 134 (Miss. 2005), and related cases. Plaintiffs have now [475] moved the Court to reconsider its decision, to which Ford [478] responded and Plaintiffs [479] replied. The issues are now ripe for disposition by the Court.

## DISCUSSION

### I. Motion for Reconsideration Standard

Reconsideration of interlocutory orders is governed by Fed. R. Civ. P. 54(b), which provides that "any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all of the parties . . . may be revised at any time before the entry of judgment adjudicating all the claims and all the parties' rights and liabilities."

"Rule 54(b) allows parties to seek reconsideration of interlocutory orders and authorizes the district court to 'revise[] at any time' 'any order or other decision . . . [that] does not end the action.'" *Austin v. Kroger Tex., L.P.*, 864 F.3d 326, 336 (5th Cir. 2017). Under this Rule, a district court is "free to reconsider and reverse its decision for any reason it deems sufficient, even in the absence of new evidence or

an intervening change in or clarification of the substantive law." *Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020). "However, a motion for reconsideration based upon the same arguments previously addressed to the Court only serves to waste valuable court resources." *Bishop Ins. Agency LLC v. Bishop Ins. Servs. PLLC*, No. 1:18CV350-HSO-JCG, 2020 WL 1861962, at *1 (S.D. Miss. Mar. 16, 2020).

## II.  Plaintiffs' Motion for Reconsideration

Plaintiffs ask the Court to reconsider its finding that there is no genuine issue of material fact as to the lack of causation under the asbestos-specific standard. In an asbestos litigation setting, the plaintiff must prove causation through (1) exposure to a particular product; (2) on a regular basis; (3) over an extended period of time; and (4) in proximity to where the plaintiff actually worked. *Gorman-Rupp Co. v. Hall*, 908 So.2d 749, 757 (Miss. 2005). This test is "a de minimis rule in that a plaintiff is required to prove more than a casual or minimal contact with the product." *Smith v. Union Carbide Corp.*, 130 So. 3d 66, 69 (Miss. 2013). Failure to produce evidence of exposure at hazardous levels leaves a plaintiff "'unable to carry their burden on the issue of causation.'" *Gorman-Rupp Co.*, 908 So. 2d at 757 (quoting *Chavers v. Gen. Motors Corp.*, 79 S.W. 3d 361, 369 (Ark. 2002)).

Plaintiffs dispute the Court's finding on three fronts. First, they argue that the Court neglected to consider other parts of Dickens's deposition testimony regarding his exposure to Ford products while employed at Speedy Gas Station in

the 1970s.  In its decision, the Court considered Dickens's testimony that he personally worked with Ford products "twenty to twenty-five" times at Speedy (Video Dep. William Dickens, 314:13-315:15, ECF No. 451-1) with minor contact in the following decades.[1]  The Court compared this testimony to similar cases applying Mississippi's "frequency, regularity, and proximity" test and found that this limited contact was inadequate to support causation under the case law.  *See Dickens v. A-1 Auto Parts & Repair, Inc.*, No. 1:18CV162-LG-JCG, 2021 WL 518329, at *3 (S.D. Miss. Feb. 11, 2021) (citing *Lohrmann v. Pittsburgh Corning Corp.*, 782 F.2d 1156, 1163 (4th Cir. 1986); *Winhauer v. Air & Liquid Sys. Corp.*, Civ. No. 15-177-RGA-SRF, 2016 WL 4238637, at *6-7 (D. Del. Aug. 9, 2016) (applying Mississippi law); *Malone v. Air & Liquid Sys. Corp.*, Civ. No. 14-406-GMS-SRF, 2016 WL 4522164, at *7-8 (D. Del. Aug. 29, 2016) (applying Mississippi law); and *Phillips 66 Co. v. Lofton*, 94 So. 3d 1051, 1063 (Miss. 2012)).

In response, Plaintiffs argue that approximations contained in other parts of Dickens's testimony—the time he spent at Speedy, the number of jobs he performed at Speedy, and the percentage of jobs which involved Ford products—contradict this testimony and create a genuine issue of material fact under the asbestos causation

---

[1] Dickens testified to a few instances of involvement with Ford products while working on vehicles owned by family and friends in the 1970s and '80s, as well as two Ford vans in the '80s and '90s (Discovery Dep. William Dickens, 170:17-173:7; 324:6-325:3; 356:8-19, 376:13-5; 528:2-535:17, ECF No. 451-2), though Dickens could not call the brand name of the parts he installed in or removed from the vans. (*Id.* at 530:21-534:20).

standard.[2]  However, the Court did not decide that this testimony directly contradicted his claim to "twenty to twenty-five" instances of exposure to Ford products at Speedy.  Rather, the Court found that the "twenty to twenty-five" times testimony was an explicit summation of his contact with Ford products at Speedy and was insufficient to meet the applicable causation standard.

Even then, internally inconsistent deposition testimony does not necessarily create a genuine issue of material fact, where the inconsistency merely invites speculation.  *See Mattox v. Am. Standard, Inc.*, Civ. No. 2:07-74489, 2011 WL 5458276, at *1 n.1 (E.D. Pa. July 11, 2011) ("Plaintiff cannot raise a genuine issue of material fact by pointing to inconsistencies in Mr. Mattox's own deposition testimony.  A jury would have to speculate in order to determine whether Mr. Mattox was in fact exposed to Georgia Pacific joint compound."); *see also In re Asbestos Prods. Liability Litig. (No. V)*, 578 F. App'x 160, 162 (3rd Cir. 2014); *Winhauer*, 2016 WL 4238637, at *7 (applying Mississippi law) ("Plaintiff's assertion that Mr. Winhauer used Bendix brakes on each brake job (twelve times), is an inference only supported by speculation, and the court may not rely on mere speculation to find sufficient exposure.") (citing *In re Asbestos Litig.*, 2015 WL

---

[2] Specifically, Dickens estimated that he would work at Speedy four days a week while in school and six days a week over the summer (Video Dep. William Dickens, 29:9-24, ECF No. 451-1), that Speedy averaged 2 brake jobs and 4-5 clutch jobs during a typical school week and 8-10 brake jobs and 3-9 clutch jobs during a summer week (*Id.* at 37:6-25; 46:13-47:16), and that 20% of the brake jobs and 15% of the clutch jobs involved Ford products.  (*Id.* at 39:16-40:5; 51:3-10).  The Court notes again that Dickens could not recall personally installing any brand of clutch besides those of Borg-Warner.  (*Id.* at 47:22-48:7).

5766460, at *10 (D. Del. Sep. 30, 2015) ("While all reasonable inferences must be drawn in favor of the non-movant, the nonmoving party cannot create a genuine issue of material fact through mere speculation or the building of inference upon inference.")). Here, Dickens clearly testified that he was exposed to the offending products twenty to twenty-five times at Speedy, with isolated instances thereafter. Plaintiffs would invite the factfinder to run further calculations of possible exposure—based on approximations contained in other parts of Dickens's testimony—and determine that potentially higher exposure could result. These speculative possibilities cannot create a genuine issue of material fact against Dickens's own explicit summary of his exposure.

Second, Plaintiffs argue that the Court neglected to consider the opinions of their experts, Dr. Compton, Dr. Moline, and Dr. Kradin, with respect to causation. Ford responds, "that none of Plaintiffs' experts purported to opine that Mr. Dickens was exposed to harmful levels of asbestos attributable to Ford products, or exposure to asbestos from Ford products could or did cause Mr. Dickens' mesothelioma." (Def.'s Resp. Opp. Pls.' Mot. Reconsideration, 5, ECF No. 478). The Court agrees. In Mississippi, asbestos plaintiffs must "show product identification of the defendants' actual products, exposure of the plaintiffs to those products, and proximate causation as to the injuries suffered by the plaintiffs." *Monsanto Co.*, 912 So. 2d at 137; *see also Gorman-Rupp Co.*, 908 So. 2d at 757 (granting summary judgment to the defendant where the plaintiff had not shown exposure to an "asbestos-containing product attributable to Gorman that resulted in his alleged

injuries"). Applying this standard, Ford is correct that Dr. Moline expressly did not attribute Dickens's mesothelioma to Ford products in her medical causation opinion.[3] Likewise, the expert reports of Dr. Compton and Dr. Kradin omit any discussion of the role Ford products may have played in Dickens's mesothelioma.[4] These expert opinions fail to attribute Dickens's mesothelioma to Ford products in any specific way and cannot create a genuine issue of material fact on the issue of causation under the relevant legal standard.

Third, Plaintiffs argue that the Court erred in its reading of certain case law. In its previous [471] Order, the Court cited jurisprudence on Mississippi's asbestos causation standard and found that the facts before it was analogous to facts found

---

[3] At her deposition, Dr. Moline testified: "I look at it from a standpoint of not particularly the particular manufacturer's product, I'm looking at it more for the frequency, regularity, types of exposure that folks have to different types of products and what those scenarios would be. I think that goes into consideration. I'm agnostic about a brand per se because that's not my jam, so to speak. As a medical causation person, I'm not here to say that Acme is worse than Apex. I'm looking at it just in terms of how they describe their use of various products and that are enumerated by company name." (*See* Dep. Jacqueline Moline, MD, 82:1-19, ECF No. 401-3). Accordingly, the Court cannot find in Dr. Moline's report any discussion of the extent to which Ford products may have caused Dickens's mesothelioma. (*See* Dr. Moline Expert Report, 6-8, 21-22, ECF No. 451-13).

[4] The Court cannot locate in Dr. Compton's consideration of general "asbestos-containing friction materials" any discussion of the causation attributable to Dickens's limited contact with Ford products. (*See* Dr. Compton Expert Report, 7-9, ECF No. 451-16). The same is true of Dr. Kradin's conclusions regarding Dickens's mesothelioma, in which he "attribute[s] his malignant mesothelioma to his cumulative exposures to asbestos, as delineated in his deposition and this report." (Dr. Kradin Expert Report, 20, ECF No. 451-28). Because asbestos plaintiffs must show "product identification of the defendants' actual products, exposure of the plaintiffs to those products, and proximate causation as to the injuries suffered by the plaintiffs," *Monsanto Co.*, 912 So. 2d at 137, these opinions fail to generate a genuine issue of material fact on the issue of causation.

insufficient to support causation in the past.  The Court sees no reason to revisit its analysis.  Plaintiffs argue that the testimony and evidence in the cited cases were weak and that "the *Lohrmann* frequency, regularity and proximity test is not based purely on number of exposures."  (Mem. Supp. Pl.'s Mot. Reconsideration, 8, ECF No. 476).  The Court notes that it did not reduce the causation test to a simple numbers game.  Rather, it engaged in factual comparison with other cases to determine whether there is a genuine issue of material fact under the relevant causation standard.  *See, e.g., Winhauer*, 2016 WL 4238637, at *7 ("Rather, the facts are more akin to *Lohrmann* because the record indicates that Mr. Winhauer could have been exposed to asbestos-containing brakes up to twelve times, and likely less. . .").  While some cases may epitomize heavy exposure, *see, e.g., Phillips 66 Co. v. Lofton*, 94 So. 3d at 1063 (considering exposure to "'thousands' of bags" of asbestos-containing material), and some less, *see, e.g., Gorman-Rupp Co.*, 908 So. 2d at 752 (considering a plaintiff who failed to show "*any* exposure to an asbestos-containing product attributable to Gorman"), not every case in the middle ground will necessarily pass the causation threshold.  The Court finds that Dickens testified to minimal and limited exposure to Ford products, akin to other cases, and that there is no genuine issue of material fact to be submitted to a jury.

Plaintiffs also argue that certain cases must be distinguished where the plaintiff developed asbestosis rather than mesothelioma.  However, "[i]n addressing exposure to asbestos-containing products, Mississippi courts have not distinguished between different asbestos-related diseases when applying the frequency,

regularity, and proximity test." *Winhauer*, 2016 WL 4238637, at *4. Hence, the Court cannot agree with Plaintiffs' proposed distinction, nor can it disregard Mississippi's causation framework.

### III. Wanton and Willful Conduct and Punitive Damages

Because the Court sustains its grant of summary judgment on the issue of causation in the underlying claims, it must also sustain its grant of summary judgment on the issue of punitive damages. *Union Carbide Corp. v. Nix, Jr.*, 142 So. 3d 374, 392 (Miss. 2014) (noting in an asbestos case that "[a]bsent a valid claim for compensatory damages, there can be no claim for punitive damages"); *Elliott v. El Paso Corp.*, 181 So. 3d 263, 275 (Miss. 2015) (holding that where "Plaintiffs' underlying claims fail as a matter of law, . . . Plaintiffs' punitive-damages claims also fail") (citing *Nix*, 142 So. 3d at 392). Therefore, the Court will not disturb this holding.

**IT IS THEREFORE ORDERED AND ADJUDGED** that the [475] Motion for Reconsideration filed by Plaintiffs, William and Karla Dickens, is **DENIED**.

**SO ORDERED AND ADJUDGED** this the 9th day of June, 2021.

s/ *Louis Guirola, Jr.*
LOUIS GUIROLA, JR.
UNITED STATES DISTRICT JUDGE